UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

PATRICK GLEASON                          No. 2:10-cv-02030-MCE-EFB

     Plaintiff,

  v.                                     MEMORANDUM AND ORDER

ANNE GLASSCOCK, et al.

     Defendants.

----oo0oo----

Plaintiff Patrick Gleason seeks redress against Defendant Anne Glasscock ("Defendant"), a supervisory investigator with the California Horse Racing Board ("CHRB"), alleging a violation of his substantive due process rights under the Fourteenth Amendment. Plaintiff also seeks redress for several state-law violations. Presently before the Court is Defendant's Motion to Dismiss pursuant to Rule 12(b)(6). For the reasons set forth below, Defendant's motion is GRANTED.[1]

---

[1] Because oral argument will not be of material assistance, the Court ordered this matter submitted on the briefing. E.D. Cal. R. 230(g).

1

## BACKGROUND[2]

In 2004, Plaintiff was issued a license by the CHRB as both a racehorse owner and racehorse trainer.  Plaintiff admits that, prior to being issued licenses by CHRB, he had several criminal convictions and was released from prison in 1996.  Although CHRB has discretion to refuse to issue a license to a person who has been convicted of a crime, CHRB issued Plaintiff's licenses despite his criminal history.  Plaintiff's California licenses expired on November 23, 2006, and Plaintiff thus had to renew them if he desired to continue participating in horse racing within California.

Plaintiff held similar racehorse owner/trainer licenses in Oregon and Arizona.  In 2006, Plaintiff's Oregon license was suspended for "irregularities" with Plaintiff's Oregon racing application, in particular, for Plaintiff's failure to adequately disclose his criminal history.  Plaintiff explains that the "irregularities" in the Oregon license application were due to alterations to his license application, which were done without his knowledge, and to the loss by the licensing officials of an attachment disclosing Plaintiff's criminal history.  In 2007, the Oregon Racing Commission confirmed the revocation of Plaintiff's Oregon racing license.  By operation of Oregon law, Plaintiff became ineligible to reapply for his Oregon license until May 26, 2008.

///

---

[2] The following facts are taken from Plaintiff's April 30, 2010, Complaint.

2

1       In 2006, Plaintiff became a subject of investigation by the
2  Arizona Department of Racing for failure to disclose a
3  misdemeanor arrest when applying for his Arizona license.
4  Plaintiff alleges that the omission of his misdemeanor arrest was
5  inadvertent.  However, the Arizona racing director revoked
6  Plaintiff's Arizona license.  Plaintiff became eligible to
7  reapply for his Arizona license when his Oregon suspension/
8  revocation ended on May 26, 2008.
9       Plaintiff alleges that, between May 2008 and June 2009,
10 Defendant, CHRB's supervisory investigator, improperly refused to
11 renew Plaintiff's California licenses.  According to Plaintiff,
12 he met with Defendant to discuss the renewal of his California
13 licenses when he became eligible for licensing in Oregon and
14 Arizona on May 26, 2008.  Defendant allegedly informed Plaintiff
15 that she would block Plaintiff's return to racing because of
16 Plaintiff's past criminal history, and that she would require
17 Plaintiff to undergo a "fitness hearing."  Plaintiff alleges that
18 Defendant's statements were contrary to CHRB's "custom and
19 practice," pursuant to which applicants already licensed in good
20 standing with CHRB are eligible for an automatic license renewal.
21 Plaintiff further alleges that Defendant filed a frivolous
22 complaint with CHRB's Board of Stewards claiming that Plaintiff
23 was in violation of CHRB Rule 1484 due to Plaintiff's
24 suspension/revocation in Oregon and Arizona although Plaintiff's
25 suspension/revocation in those states had expired.  According to
26 Plaintiff, the hearing on Defendant's complaint was taken off the
27 calendar and was never rescheduled.
28 ///

3

Plaintiff also alleges that Defendant improperly maintained Plaintiff's status in the internal CHRB computer licensee database as "unfit for racing."

In July 2008, CHRB special investigator Sharon Jolly allegedly assured Plaintiff's attorney that Plaintiff could renew his licenses at the Solano County Fair. Jolly also allegedly stated that, if Defendant wanted to deny Plaintiff's license, she would have to do it on grounds other than Plaintiff's criminal history. However, when Plaintiff traveled to the Solano County Fair, Defendant issued a form refusal notice to Plaintiff indicating that Plaintiff's application was denied because of his past criminal history and because of his suspension/revocation in other jurisdictions. Defendant also informed Plaintiff that he could not seek immediate review of her decision with the Board of Stewards, which, Plaintiff alleges, was contrary to the "policy, practice, custom and procedure of the CHRB racing stewards." Complaint, ¶ 38.

When Plaintiff filed an administrative appeal of Defendant's refusal to renew his license, Defendant allegedly prepared paperwork presenting Plaintiff's case as "license denial," as opposed to a refusal to renew a license of a current licensee. Defendant referred Plaintiff's appeal to the CHRB Headquarters in Sacramento, and not to the Board of Stewards contrary to "the customary and appropriate process for relicensing of a licensee already in good standing with the CHRB." Id., ¶ 42. Plaintiff alleges that he was the only licensee in good standing to be treated in this fashion.

///

4

Plaintiff eventually withdrew his appeal of Defendant's refusal of Plaintiff's licensing application because he believed that "he was railroaded into the 'fitness hearing' in contravention of CHRB regulations and Board of Stewards policies and practices." Id., ¶ 46.

In September 2008, all pending hearings against Plaintiff were vacated. However, when Plaintiff attempted to reapply for his licenses in October 2008, Defendant again refused to renew Plaintiff's license because of Plaintiff's prior criminal history and suspensions in Oregon and Arizona. When Plaintiff met with the Stewards, the Stewards explained that they were unable to grant Plaintiff a license because of Defendant's objections. Plaintiff claims that Defendant misinterpreted the content of the applicable CHRB directive to the Stewards. Believing that he would not succeed in renewing his licenses in California, Plaintiff was allegedly "forced" to travel to Arizona where he obtained a racing license in January 2009. Subsequently, Plaintiff also obtained a racing license in Nebraska.

In May 2009, while residing in Nebraska, Plaintiff applied to the racing secretary and was granted stalls at the San Joaquin County Fair in California. When Plaintiff contacted CHRB in Sacramento, he was advised that he could set up his barn on the San Joaquin County Fairgrounds prior to renewing his California licenses and that he could renew his California licenses at the fairgrounds.

///
///
///

5

However, several days prior to the fair, the San Joaquin County Fair Superintendent approached Plaintiff and informed him that Steward Grant Baker had stated that Plaintiff was suspended from racing in California, and thus could not be on the grounds. Plaintiff alleges that Baker received this untrue information from Defendant.

Plaintiff contacted Steward Nevin, who advised Plaintiff to travel to Sacramento and apply for his licenses at CHRB headquarters.  In June 2009, Plaintiff applied for renewal of his licenses in Sacramento and was granted such a renewal without any "fitness hearing."  However, according to Plaintiff, Defendant still maintains Plaintiff's status in CHRB's license search database as "contact CHRB" even though Plaintiff is in good standing with CHRB and his licenses do not expire until 2011. Plaintiff, initially acting pro se, filed this action in Sacramento County Superior Court against Defendant, the CHRB and Does 1-30.  On July 30, 2010, CHRB removed the case to this Court on the ground that Plaintiff's Complaint alleges a federal claim. On March 31, 2011, this Court adopted the Magistrate Judge's Findings and Recommendations dismissing with prejudice all of Plaintiff's claims against CHRB.  For the following reasons, the claims against the remaining Defendant are now dismissed as well.

///
///
///
///
///
///

6

**STANDARD**

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the [...] claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted).  A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1950-51 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed.2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")).
///

Furthermore, "Rule 8(a)(2) ... requires a 'showing,' rather than a blanket assertion, of entitlement to relief." Id., 550 U.S. at 556 n. 3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing 5 Charles Alan Wright & Arthur R. Miller, supra, at § 1202). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs ... have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, ... undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment...." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspen, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party ... carries the greatest weight." Eminence Capital, 316 F.3d at 1052.

8

Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." <u>Intri-Plex Techs. v. Crest Group, Inc.</u>, 499 F.3d 1048, 1056 (9th Cir. 2007) (internal citations and quotations omitted).

## ANALYSIS

**A.   Plaintiff's Federal Claim.**

Defendant argues that the Court should dismiss Plaintiff's first cause of action for violation of his substantive due process rights under the Fourteenth Amendment on three grounds: 1) failure to exhaust administrative remedies; 2) res judicata; and 3) failure to state a cause of action.  Motion, 4-9.  As explained it detail below, the Court finds that Plaintiff's federal claim against Defendant should be dismissed for failure to state a viable claim under 42 U.S.C. § 1983.  Therefore, the Court need not address Defendant's res judicata and exhaustion arguments.

"Section 1983 provides for liability against any person acting under color of law who deprived another 'of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." <u>S. Cal. Gas Co. v. City of Santa Ana</u>, 336 F.3d 885, 887 (9th Cir. 2003) (quoting 42 U.S.C. § 1983).  Here, Plaintiff alleges that Defendant violated his constitutional right to substantive due process by her participation in the denial of Plaintiff's horse owner/trainer license.

9

In particular, Plaintiff alleges that he had a valid state law property interest in his California licenses, including the right to renew them under CRHB's policies, practices, and procedures. Plaintiff further alleges that he was deprived of this property interest by Defendant's arbitrary, capricious and unreasonable actions of refusing to renew Plaintiff's licenses for over a year. For her part, Defendant contends that her actions were not arbitrary or capricious, and, even if they were, she is entitled to immunity.

Substantive due process "forbids the government from depriving a person of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with rights implicit in the concept of ordered liberty.'" Nunez v. City of Los Angeles, 147 F.3d 867, 871 (9th Cir. 1998) (citations omitted). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). "A reasonable expectation of entitlement is determined largely by the language of the statute and the extent to which the entitlement is couched in mandatory terms." Ass'n of Orange Co. Deputy Sheriffs v. Gates, 716 F.2d 733, 734 (9th Cir. 1983). To establish a violation of substantive due process, Plaintiff must demonstrate that the government's action was "clearly arbitrary and unreasonable, having no substantial relation to public health, safety, morals, or general welfare.'"
///

Wedges/Ledges of Cal., Inc. v. City of Phoenix, 24 F.3d 56, 65 (9th Cir. 1994) (citations omitted).  Defendant does not contend that Plaintiff has no property interest in his licenses, but instead argues that Defendant's actions were not arbitrary and capricious.

According to the regulations promulgated by CHRB, horse owner/trainer licenses issued by CHRB expire in the "third year on the last day of the birth month" of the license and must be renewed thereafter.  Cal. Code Regs. tit 4, § 1486.  Regardless of whether an applicant seeks a new license or relicensing upon the expiration of a previously-issued license, CHRB "*may* refuse to issue a license or deny a license" to an applicant who: 1) was convicted of a crime punishable by imprisonment or a crime involving moral turpitude; or 2) "committed an act involving moral turpitude,...or acts in connection with horse racing and/or a legalized gaming business which were fraudulent or in violation of a trust or duty."  Id. § 1489(a),(g) (emphasis added).

Moreover, pursuant to CHRB's regulations, suspension of an applicant's license in another jurisdiction is "prima facie evidence that he or she is unfit to be granted a license or unfit to hold a license or participate in racing in this State as a licensee during the term of any suspension or exclusion from racing imposed by any competent racing jurisdiction."  Id. § 1484.  CHRB's licensing actions are discretionary since CHRB has the power to determine the facts with regard to the fitness of an applicant for a license and to decide whether to refuse or deny a license to that applicant.  See McDonough v. Goodcell, 13 Cal.2d 741, 748 (1939).

11

Plaintiff concedes that he has several criminal convictions and has served time in prison in the state of Oregon.[3] Plaintiff nonetheless argues that Defendant should not have denied his relicensing application based on his past criminal history because CHRB previously ruled that Plaintiff's prior criminal offenses had not disqualified Plaintiff from obtaining his horse owner/trainer licenses in the first place. Defendant's reasons for refusing Plaintiff's relicensing application, however, were not limited to Plaintiff's criminal past. The Complaint alleges that Defendant denied Plaintiff's application because of, among other things, Plaintiff's suspension from horse racing activities in two other jurisdictions, Oregon and Arizona. As the Complaint demonstrates, both suspensions/revocations were based on Plaintiff's untruthful statements associated with license applications in those jurisdictions. Complaint, ¶¶ 13-14, 19. Although Plaintiff repeatedly alleges that he is eligible for reapplying for licenses in both Oregon and Arizona, the Complaint demonstrates that Plaintiff's license suspension in Oregon is still in effect and has not been lifted. Id., ¶ 17.

California courts have explained that "the public's interest in legitimate horse racing and wagering requires its protection from individuals the [CHRB] rationally believes will threaten the honesty, fairness and safety of the activity." Morrison v. Cal. Horse Racing Bd., 205 Cal. App. 3d 211, 218 (1988).

---

[3] Plaintiff asserts that in 1985 he was convicted of check forgery in Washington, in 1987 he was convicted of possession of stolen property, in 1994 he was convicted of felony possession of stolen property and racketeering in Oregon for which he served two and a half years in prison, and sometime around 1994 he was again convicted of possession of stolen property in Washington. Complaint, ¶ 8.

Thus, Plaintiff's dishonest acts associated with his applications for racing licenses in Oregon and Arizona, coupled with Plaintiff's prior criminal history, gave CHRB and its officials sufficient reasons to refuse Plaintiff's relicensing application under § 1486 of California Code of Regulations.

Moreover, pursuant to CHRB's regulations, Defendant's refusal to issue a license, as opposed to a denial of a license, was without prejudice. See Cal. Code Regs. tit 4, § 1493. Plaintiff had two options in light of such a refusal:  1) to reapply for a license at a subsequent race meeting; or 2) to appeal Defendant's refusal to grant him a license to CHRB. Id. According to the Complaint, Plaintiff did in fact appeal Defendant's decision to CHRB, but decided to withdraw the appeal before the scheduled hearing.  Plaintiff's decision to continue filing licensing applications at subsequent race meetings, as opposed to seeking an appeal with CHRB, does not turn Defendant's refusal of Plaintiff's relicensing application into an abuse of discretion actionable as a substantive due process violation that "shocks the conscience."

The Court also finds unpersuasive Plaintiff's argument that Plaintiff's substantive due process rights were violated because CHRB's stewards, and not Defendant, had relicensing authority under CHRB's customs and practices.  First, Plaintiff himself concedes that "it is the job of the investigators to...initially refuse or approve...license applications based on objective criteria and evidence."  Complaint, ¶ 10.

///
///

13

As the Complaint demonstrates, Defendant did exactly that when she refused to grant Plaintiff's relicensing application because of Plaintiff's license suspension/revocation in Oregon and Arizona and Plaintiff's prior criminal history.  Second, short of conclusory statements about CHRB's customary practice of automatic license renewals for licensees in good standing with CHRB, the Complaint is devoid of any factual allegations of the existence of such a custom.  In fact, regulations promulgated by CHRB do not make any distinction between the process of applying for a new license and the process of relicensing. See Cal. Code Regs. tit 4, § 1489.  In his opposition papers, Plaintiff has not cited to any statutory or regulatory authority, and the Court is not aware of any, that would prevent Defendant from refusing to grant Plaintiff's relicensing application.

Finally, unlike procedural due process analysis, "[a] substantive due process inquiry focuses on 'what' the government has done, as opposed to 'how and when' the government did it." Amsden v. Moran, 904 F.2d 748, 754 (1st Cir. 1990).  Because CHRB and Defendant had sufficient reasons to deny Plaintiff's relicensing application, Plaintiff's substantive due process claim fails even if Plaintiff can demonstrate that the process of such a denial was defective in some respect.  Accordingly, Plaintiff has failed to plausibly demonstrate that Defendant's action of refusing to grant Plaintiff's relicensing application was arbitrary and capricious.

///

///

///

14

Moreover, even if the Court was to conclude that Defendant violated Plaintiff's substantive due process rights under the Fourteenth Amendment, Defendant is entitled to qualified immunity.[4]  "[G]overnment officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In determining whether qualified immunity applies, the Court should consider: 1) whether the facts, as alleged by Plaintiff, "make out a violation of a constitutional right"; and 2) whether Plaintiff's right was clearly established at the time of the alleged violation. Pearson v. Callahan, 555 U.S. 223, 232 (2009).  Courts have "discretion to grant qualified immunity on the basis of the 'clearly established' prong alone, without deciding in the first instance whether any right had been violated." James v. Rowlands, 606 F.3d 646, 651 (9th Cir. 2010).  "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002).

///
///
///
///

---

[4] Defendant also contends that she is entitled to absolute immunity. Motion, p. 7-8.  The Court need not examine whether Defendant is entitled to absolute immunity because it holds that she is entitled to qualified immunity.

15

In light of CHRB's discretion to deny or refuse Plaintiff's license application based upon Plaintiff's criminal convictions and his license suspensions/revocations in sister-states, Plaintiff has failed to demonstrate that he had a clearly established statutory or constitutional right to have his licenses renewed. Thus, Defendant is entitled to qualified immunity in the instant § 1983 action.

Accordingly, the Court grants Defendant's motion to dismiss Plaintiff's first cause of action. Because the Court determines that any amendment of Plaintiff's claim under 42 U.S.C. § 1983 would be futile, it dismisses Plaintiff's first cause of action without leave to amend. See Reddy v. Litton Industries, Inc., 912 F.2d 291, 296-97 (9th Cir. 1990).

**B.   Plaintiff's State Claims.**

Having dismissed Plaintiff's sole federal claim, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(c)(3), and remands the matter to Sacramento County Superior Court.

**CONCLUSION**

For the reasons stated above, Defendant's Motion to Dismiss Plaintiff's Complaint (ECF No. 33) is GRANTED without leave to amend as to Plaintiff's First Cause of Action, and the Court declines to exercise supplemental jurisdiction over the remaining state-law claims.

16

The Clerk of the Court is directed to remand this case to the originating state court, the Superior Court of the State of California in and for the County of Sacramento, for final adjudication.

IT IS SO ORDERED.

Dated: March 29, 2012

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE