UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

PATRICK GLEASON                    No. 2:10-cv-02030-MCE-EFB

          Plaintiff,

     v.                            <u>MEMORANDUM AND ORDER</u>

ANNE GLASSCOCK, et al.

          Defendants.

----oo0oo----

     Plaintiff Patrick Gleason seeks redress against Defendant
Anne Glasscock ("Defendant"), a supervisory investigator with the
California Horse Racing Board ("CHRB"), alleging a violation of
his substantive due process rights under the Fourteenth
Amendment.  Plaintiff also seeks redress for several state-law
violations.  Presently before the Court is Defendant's Motion to
Dismiss pursuant to Rule 12(b)(6).  For the reasons set forth
below, Defendant's motion is GRANTED.[1]

---

[1] Because oral argument will not be of material assistance,
the Court ordered this matter submitted on the briefing.  E.D.
Cal. R. 230(g).

BACKGROUND[2]

In 2004, Plaintiff was issued a license by the CHRB as both a racehorse owner and racehorse trainer. Plaintiff admits that, prior to being issued licenses by CHRB, he had several criminal convictions and was released from prison in 1996. Although CHRB has discretion to refuse to issue a license to a person who has been convicted of a crime, CHRB issued Plaintiff's licenses despite his criminal history. Plaintiff's California licenses expired on November 23, 2006, and Plaintiff thus had to renew them if he desired to continue participating in horse racing within California.

Plaintiff held similar racehorse owner/trainer licenses in Oregon and Arizona. In 2006, Plaintiff's Oregon license was suspended for "irregularities" with Plaintiff's Oregon racing application, in particular, for Plaintiff's failure to adequately disclose his criminal history. Plaintiff explains that the "irregularities" in the Oregon license application were due to alterations to his license application, which were done without his knowledge, and to the loss by the licensing officials of an attachment disclosing Plaintiff's criminal history. In 2007, the Oregon Racing Commission confirmed the revocation of Plaintiff's Oregon racing license. By operation of Oregon law, Plaintiff became ineligible to reapply for his Oregon license until May 26, 2008.

///

_____

[2] The following facts are taken from Plaintiff's April 30, 2010, Complaint.

2

1   In 2006, Plaintiff became a subject of investigation by the
2   Arizona Department of Racing for failure to disclose a
3   misdemeanor arrest when applying for his Arizona license.
4   Plaintiff alleges that the omission of his misdemeanor arrest was
5   inadvertent.  However, the Arizona racing director revoked
6   Plaintiff's Arizona license.  Plaintiff became eligible to
7   reapply for his Arizona license when his Oregon suspension/
8   revocation ended on May 26, 2008.
9   Plaintiff alleges that, between May 2008 and June 2009,
10  Defendant, CHRB's supervisory investigator, improperly refused to
11  renew Plaintiff's California licenses.  According to Plaintiff,
12  he met with Defendant to discuss the renewal of his California
13  licenses when he became eligible for licensing in Oregon and
14  Arizona on May 26, 2008.  Defendant allegedly informed Plaintiff
15  that she would block Plaintiff's return to racing because of
16  Plaintiff's past criminal history, and that she would require
17  Plaintiff to undergo a "fitness hearing."  Plaintiff alleges that
18  Defendant's statements were contrary to CHRB's "custom and
19  practice," pursuant to which applicants already licensed in good
20  standing with CHRB are eligible for an automatic license renewal.
21  Plaintiff further alleges that Defendant filed a frivolous
22  complaint with CHRB's Board of Stewards claiming that Plaintiff
23  was in violation of CHRB Rule 1484 due to Plaintiff's
24  suspension/revocation in Oregon and Arizona although Plaintiff's
25  suspension/revocation in those states had expired.  According to
26  Plaintiff, the hearing on Defendant's complaint was taken off the
27  calendar and was never rescheduled.
28  ///

3

1 Plaintiff also alleges that Defendant improperly maintained
2 Plaintiff's status in the internal CHRB computer licensee
3 database as "unfit for racing."

4     In July 2008, CHRB special investigator Sharon Jolly
5 allegedly assured Plaintiff's attorney that Plaintiff could renew
6 his licenses at the Solano County Fair.  Jolly also allegedly
7 stated that, if Defendant wanted to deny Plaintiff's license, she
8 would have to do it on grounds other than Plaintiff's criminal
9 history.  However, when Plaintiff traveled to the Solano County
10 Fair, Defendant issued a form refusal notice to Plaintiff
11 indicating that Plaintiff's application was denied because of his
12 past criminal history and because of his suspension/revocation in
13 other jurisdictions.  Defendant also informed Plaintiff that he
14 could not seek immediate review of her decision with the Board of
15 Stewards, which, Plaintiff alleges, was contrary to the "policy,
16 practice, custom and procedure of the CHRB racing stewards."
17 Complaint, ¶ 38.

18     When Plaintiff filed an administrative appeal of Defendant's
19 refusal to renew his license, Defendant allegedly prepared
20 paperwork presenting Plaintiff's case as "license denial," as
21 opposed to a refusal to renew a license of a current licensee.
22 Defendant referred Plaintiff's appeal to the CHRB Headquarters in
23 Sacramento, and not to the Board of Stewards contrary to "the
24 customary and appropriate process for relicensing of a licensee
25 already in good standing with the CHRB."  Id., ¶ 42.  Plaintiff
26 alleges that he was the only licensee in good standing to be
27 treated in this fashion.
28 ///

4

Plaintiff eventually withdrew his appeal of Defendant's refusal of Plaintiff's licensing application because he believed that "he was railroaded into the 'fitness hearing' in contravention of CHRB regulations and Board of Stewards policies and practices." Id., ¶ 46.

In September 2008, all pending hearings against Plaintiff were vacated.  However, when Plaintiff attempted to reapply for his licenses in October 2008, Defendant again refused to renew Plaintiff's license because of Plaintiff's prior criminal history and suspensions in Oregon and Arizona.  When Plaintiff met with the Stewards, the Stewards explained that they were unable to grant Plaintiff a license because of Defendant's objections. Plaintiff claims that Defendant misinterpreted the content of the applicable CHRB directive to the Stewards.  Believing that he would not succeed in renewing his licenses in California, Plaintiff was allegedly "forced" to travel to Arizona where he obtained a racing license in January 2009.  Subsequently, Plaintiff also obtained a racing license in Nebraska.

In May 2009, while residing in Nebraska, Plaintiff applied to the racing secretary and was granted stalls at the San Joaquin County Fair in California.  When Plaintiff contacted CHRB in Sacramento, he was advised that he could set up his barn on the San Joaquin County Fairgrounds prior to renewing his California licenses and that he could renew his California licenses at the fairgrounds.

///

///

///

5

However, several days prior to the fair, the San Joaquin County Fair Superintendent approached Plaintiff and informed him that Steward Grant Baker had stated that Plaintiff was suspended from racing in California, and thus could not be on the grounds. Plaintiff alleges that Baker received this untrue information from Defendant.

Plaintiff contacted Steward Nevin, who advised Plaintiff to travel to Sacramento and apply for his licenses at CHRB headquarters.  In June 2009, Plaintiff applied for renewal of his licenses in Sacramento and was granted such a renewal without any "fitness hearing."  However, according to Plaintiff, Defendant still maintains Plaintiff's status in CHRB's license search database as "contact CHRB" even though Plaintiff is in good standing with CHRB and his licenses do not expire until 2011. Plaintiff, initially acting pro se, filed this action in Sacramento County Superior Court against Defendant, the CHRB and Does 1-30.  On July 30, 2010, CHRB removed the case to this Court on the ground that Plaintiff's Complaint alleges a federal claim. On March 31, 2011, this Court adopted the Magistrate Judge's Findings and Recommendations dismissing with prejudice all of Plaintiff's claims against CHRB.  For the following reasons, the claims against the remaining Defendant are now dismissed as well.

///
///
///
///
///
///

**STANDARD**

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the [...] claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1950-51 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed.2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")).
///

1    Furthermore, "Rule 8(a)(2) ... requires a 'showing,' rather
2    than a blanket assertion, of entitlement to relief." Id.,
3    550 U.S. at 556 n. 3 (internal citations and quotations omitted).
4    Thus, "[w]ithout some factual allegation in the complaint, it is
5    hard to see how a claimant could satisfy the requirements of
6    providing not only 'fair notice' of the nature of the claim, but
7    also 'grounds' on which the claim rests." Id. (citing 5 Charles
8    Alan Wright & Arthur R. Miller, supra, at § 1202). A pleading
9    must contain "only enough facts to state a claim to relief that
10   is plausible on its face." Id. at 570. If the "plaintiffs ...
11   have not nudged their claims across the line from conceivable to
12   plausible, their complaint must be dismissed." Id. However, "[a]
13   well-pleaded complaint may proceed even if it strikes a savvy
14   judge that actual proof of those facts is improbable, and 'that a
15   recovery is very remote and unlikely.'" Id. at 556 (quoting
16   Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

17       A court granting a motion to dismiss a complaint must decide
18   whether to grant leave to amend. Leave to amend should be
19   "freely given" where there is no "undue delay, bad faith or
20   dilatory motive on the part of the movant, ... undue prejudice to
21   the opposing party by virtue of allowance of the amendment, [or]
22   futility of the amendment...." Foman v. Davis, 371 U.S. 178, 182
23   (1962); Eminence Capital, LLC v. Aspen, Inc., 316 F.3d 1048, 1052
24   (9th Cir. 2003) (listing the Foman factors as those to be
25   considered when deciding whether to grant leave to amend). Not
26   all of these factors merit equal weight. Rather, "the
27   consideration of prejudice to the opposing party ... carries the
28   greatest weight." Eminence Capital, 316 F.3d at 1052.

Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (internal citations and quotations omitted).

**ANALYSIS**

**A.   Plaintiff's Federal Claim.**

     Defendant argues that the Court should dismiss Plaintiff's first cause of action for violation of his substantive due process rights under the Fourteenth Amendment on three grounds: 1) failure to exhaust administrative remedies; 2) res judicata; and 3) failure to state a cause of action.  Motion, 4-9.  As explained it detail below, the Court finds that Plaintiff's federal claim against Defendant should be dismissed for failure to state a viable claim under 42 U.S.C. § 1983.  Therefore, the Court need not address Defendant's res judicata and exhaustion arguments.

     "Section 1983 provides for liability against any person acting under color of law who deprived another 'of any rights, privileges, or immunities secured by the Constitution and laws' of the United States."  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 887 (9th Cir. 2003) (quoting 42 U.S.C. § 1983). Here, Plaintiff alleges that Defendant violated his constitutional right to substantive due process by her participation in the denial of Plaintiff's horse owner/trainer license.

1   In particular, Plaintiff alleges that he had a valid state law
2   property interest in his California licenses, including the right
3   to renew them under CRHB's policies, practices, and procedures.
4   Plaintiff further alleges that he was deprived of this property
5   interest by Defendant's arbitrary, capricious and unreasonable
6   actions of refusing to renew Plaintiff's licenses for over a
7   year.  For her part, Defendant contends that her actions were not
8   arbitrary or capricious, and, even if they were, she is entitled
9   to immunity.

10       Substantive due process "forbids the government from
11  depriving a person of life, liberty, or property in such a way
12  that 'shocks the conscience' or 'interferes with rights implicit
13  in the concept of ordered liberty.'"  Nunez v. City of
14  Los Angeles, 147 F.3d 867, 871 (9th Cir. 1998) (citations
15  omitted).  "To have a property interest in a benefit, a person
16  clearly must have more than an abstract need or desire for it.
17  He must have more than a unilateral expectation of it.  He must,
18  instead, have a legitimate claim of entitlement to it." Bd. of
19  Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972).  "A
20  reasonable expectation of entitlement is determined largely by
21  the language of the statute and the extent to which the
22  entitlement is couched in mandatory terms."  Ass'n of Orange Co.
23  Deputy Sheriffs v. Gates, 716 F.2d 733, 734 (9th Cir. 1983).  To
24  establish a violation of substantive due process, Plaintiff must
25  demonstrate that the government's action was "clearly arbitrary
26  and unreasonable, having no substantial relation to public
27  health, safety, morals, or general welfare.'"
28  ///

1   Wedges/Ledges of Cal., Inc. v. City of Phoenix, 24 F.3d 56, 65

2   (9th Cir. 1994) (citations omitted).  Defendant does not contend

3   that Plaintiff has no property interest in his licenses, but

4   instead argues that Defendant's actions were not arbitrary and

5   capricious.

6       According to the regulations promulgated by CHRB, horse

7   owner/trainer licenses issued by CHRB expire in the "third year

8   on the last day of the birth month" of the license and must be

9   renewed thereafter.  Cal. Code Regs. tit 4, § 1486.  Regardless

10  of whether an applicant seeks a new license or relicensing upon

11  the expiration of a previously-issued license, CHRB "may refuse

12  to issue a license or deny a license" to an applicant who: 1) was

13  convicted of a crime punishable by imprisonment or a crime

14  involving moral turpitude; or 2) "committed an act involving

15  moral turpitude,...or acts in connection with horse racing and/or

16  a legalized gaming business which were fraudulent or in violation

17  of a trust or duty."  Id. § 1489(a),(g) (emphasis added).

18      Moreover, pursuant to CHRB's regulations, suspension of an

19  applicant's license in another jurisdiction is "prima facie

20  evidence that he or she is unfit to be granted a license or unfit

21  to hold a license or participate in racing in this State as a

22  licensee during the term of any suspension or exclusion from

23  racing imposed by any competent racing jurisdiction."  Id.

24  § 1484.  CHRB's licensing actions are discretionary since CHRB

25  has the power to determine the facts with regard to the fitness

26  of an applicant for a license and to decide whether to refuse or

27  deny a license to that applicant.  See McDonough v. Goodcell,

28  13 Cal.2d 741, 748 (1939).

11

1   Plaintiff concedes that he has several criminal convictions

2   and has served time in prison in the state of Oregon.[3]  Plaintiff

3   nonetheless argues that Defendant should not have denied his

4   relicensing application based on his past criminal history

5   because CHRB previously ruled that Plaintiff's prior criminal

6   offenses had not disqualified Plaintiff from obtaining his horse

7   owner/trainer licenses in the first place.  Defendant's reasons

8   for refusing Plaintiff's relicensing application, however, were

9   not limited to Plaintiff's criminal past.  The Complaint alleges

10  that Defendant denied Plaintiff's application because of, among

11  other things, Plaintiff's suspension from horse racing activities

12  in two other jurisdictions, Oregon and Arizona.  As the Complaint

13  demonstrates, both suspensions/revocations were based on

14  Plaintiff's untruthful statements associated with license

15  applications in those jurisdictions.  Complaint, ¶¶ 13-14, 19.

16  Although Plaintiff repeatedly alleges that he is eligible for

17  reapplying for licenses in both Oregon and Arizona, the Complaint

18  demonstrates that Plaintiff's license suspension in Oregon is

19  still in effect and has not been lifted.  Id., ¶ 17.

20  California courts have explained that "the public's interest

21  in legitimate horse racing and wagering requires its protection

22  from individuals the [CHRB] rationally believes will threaten the

23  honesty, fairness and safety of the activity."  Morrison v. Cal.

24  Horse Racing Bd., 205 Cal. App. 3d 211, 218 (1988).

25  [3] Plaintiff asserts that in 1985 he was convicted of check

26  forgery in Washington, in 1987 he was convicted of possession of
    stolen property, in 1994 he was convicted of felony possession of

27  stolen property and racketeering in Oregon for which he served
    two and a half years in prison, and sometime around 1994 he was

28  again convicted of possession of stolen property in Washington.
    Complaint, ¶ 8.

1    Thus, Plaintiff's dishonest acts associated with his applications

2    for racing licenses in Oregon and Arizona, coupled with

3    Plaintiff's prior criminal history, gave CHRB and its officials

4    sufficient reasons to refuse Plaintiff's relicensing application

5    under § 1486 of California Code of Regulations.

6         Moreover, pursuant to CHRB's regulations, Defendant's

7    refusal to issue a license, as opposed to a denial of a license,

8    was without prejudice.  <u>See</u> Cal. Code Regs. tit 4, § 1493.

9    Plaintiff had two options in light of such a refusal:  1) to

10   reapply for a license at a subsequent race meeting; or 2) to

11   appeal Defendant's refusal to grant him a license to CHRB.  <u>Id.</u>

12   According to the Complaint, Plaintiff did in fact appeal

13   Defendant's decision to CHRB, but decided to withdraw the appeal

14   before the scheduled hearing.  Plaintiff's decision to continue

15   filing licensing applications at subsequent race meetings, as

16   opposed to seeking an appeal with CHRB, does not turn Defendant's

17   refusal of Plaintiff's relicensing application into an abuse of

18   discretion actionable as a substantive due process violation that

19   "shocks the conscience."

20        The Court also finds unpersuasive Plaintiff's argument that

21   Plaintiff's substantive due process rights were violated because

22   CHRB's stewards, and not Defendant, had relicensing authority

23   under CHRB's customs and practices.  First, Plaintiff himself

24   concedes that "it is the job of the investigators to...initially

25   refuse or approve...license applications based on objective

26   criteria and evidence."  Complaint, ¶ 10.

27   ///

28   ///

13

As the Complaint demonstrates, Defendant did exactly that when she refused to grant Plaintiff's relicensing application because of Plaintiff's license suspension/revocation in Oregon and Arizona and Plaintiff's prior criminal history.  Second, short of conclusory statements about CHRB's customary practice of automatic license renewals for licensees in good standing with CHRB, the Complaint is devoid of any factual allegations of the existence of such a custom.  In fact, regulations promulgated by CHRB do not make any distinction between the process of applying for a new license and the process of relicensing.  See Cal. Code Regs. tit 4, § 1489.  In his opposition papers, Plaintiff has not cited to any statutory or regulatory authority, and the Court is not aware of any, that would prevent Defendant from refusing to grant Plaintiff's relicensing application.

Finally, unlike procedural due process analysis, "[a] substantive due process inquiry focuses on 'what' the government has done, as opposed to 'how and when' the government did it." Amsden v. Moran, 904 F.2d 748, 754 (1st Cir. 1990).  Because CHRB and Defendant had sufficient reasons to deny Plaintiff's relicensing application, Plaintiff's substantive due process claim fails even if Plaintiff can demonstrate that the process of such a denial was defective in some respect.  Accordingly, Plaintiff has failed to plausibly demonstrate that Defendant's action of refusing to grant Plaintiff's relicensing application was arbitrary and capricious.

///

///

///

14

1    Moreover, even if the Court was to conclude that Defendant

2  violated Plaintiff's substantive due process rights under the

3  Fourteenth Amendment, Defendant is entitled to qualified

4  immunity.[4]   "[G]overnment officials performing discretionary

5  functions are shielded from liability for civil damages insofar

6  as their conduct does not violate clearly established statutory

7  or constitutional rights of which a reasonable person would have

8  known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).   In

9  determining whether qualified immunity applies, the Court should

10  consider: 1) whether the facts, as alleged by Plaintiff, "make

11  out a violation of a constitutional right"; and 2) whether

12  Plaintiff's right was clearly established at the time of the

13  alleged violation.   Pearson v. Callahan, 555 U.S. 223, 232

14  (2009).   Courts have "discretion to grant qualified immunity on

15  the basis of the 'clearly established' prong alone, without

16  deciding in the first instance whether any right had been

17  violated."   James v. Rowlands, 606 F.3d 646, 651 (9th Cir. 2010).

18  "For a constitutional right to be clearly established, its

19  contours must be sufficiently clear that a reasonable official

20  would understand that what he is doing violates that right."

21  Hope v. Pelzer, 536 U.S. 730, 739 (2002).

22  ///

23  ///

24  ///

25  ///

26

27    [4] Defendant also contends that she is entitled to absolute
   immunity.  Motion, p. 7-8.  The Court need not examine whether
28  Defendant is entitled to absolute immunity because it holds that
   she is entitled to qualified immunity.

1    In light of CHRB's discretion to deny or refuse Plaintiff's

2  license application based upon Plaintiff's criminal convictions

3  and his license suspensions/revocations in sister-states,

4  Plaintiff has failed to demonstrate that he had a clearly

5  established statutory or constitutional right to have his

6  licenses renewed.  Thus, Defendant is entitled to qualified

7  immunity in the instant § 1983 action.

8    Accordingly, the Court grants Defendant's motion to dismiss

9  Plaintiff's first cause of action.  Because the Court determines

10  that any amendment of Plaintiff's claim under 42 U.S.C. § 1983

11  would be futile, it dismisses Plaintiff's first cause of action

12  without leave to amend.  <u>See</u> <u>Reddy v. Litton Industries, Inc.</u>,

13  912 F.2d 291, 296-97 (9th Cir. 1990).

14

15    **B.    Plaintiff's State Claims.**

16

17    Having dismissed Plaintiff's sole federal claim, the Court

18  declines to exercise supplemental jurisdiction over Plaintiff's

19  state law claims under 28 U.S.C. § 1367(c)(3), and remands the

20  matter to Sacramento County Superior Court.

21

22                         **CONCLUSION**

23

24    For the reasons stated above, Defendant's Motion to Dismiss

25  Plaintiff's Complaint (ECF No. 33) is GRANTED without leave to

26  amend as to Plaintiff's First Cause of Action, and the Court

27  declines to exercise supplemental jurisdiction over the remaining

28  state-law claims.

                              16

1  The Clerk of the Court is directed to remand this case to the

2  originating state court, the Superior Court of the State of

3  California in and for the County of Sacramento, for final

4  adjudication.

5      IT IS SO ORDERED.

6

  Dated: March 29, 2012

7

8  _____

9  MORRISON C. ENGLAND, JR.
   UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17